Linton & Co vs. Williams.

SAMUEL D. LINTON & Co., plaintiffs in error, vs. CHARLES A. WILLIAMS, defendant in error.

Charles A. Williams bought of S. D. Linton & Co., 100 barrels of flour, at $5.50 per barrel. The following note or memorandum of the contract was executed by S. D. Linton & Co., through their agent, Mead, and delivered to the agent of Williams.

"C. A. WILLIAMS,

|  |  | Dr. |
|---|---|---|
| To S. D. LINTON & Co., | | |
| To 100 barrels of Sup. Flour, at $5.50, - - - - | | $550.00 |

To be delivered at any time during the winter when wanted, from this date. Augusta, September, '53.

S. D. LINTON & Co.,
Per MEAD."

On the 31st of January, 1854, Williams called on Linton, tendered in gold the $550.00, and demanded the hundred barrels of flour, which were refused to be delivered. The value of flour at Augusta, during the winter of 1854. was proven.

*Held,* that the contract was not within the statute of frauds, but was sufficiently valid to authorize a recovery in damages thereon, for the breach thereof.

Certiorari, from Richmond county. Decided by Judge HOLT, October Term, 1857.

This was a *certiorari,* wherein Charles A. Williams was plaintiff, and the said Samuel D. Linton & Co., defendants, bringing up on an alleged error, from the City Court of Augusta, the proceedings from that Court, in an action on the case by the said Charles A. against the said Samuel D. & Co., for damages, alleged to have been sustained by the said Charles A., in consequence of the failure of the said Samuel D. Linton & Co., to deliver certain flour, under the following agreement.

"C. A. WILLIAMS,

|  |  | Dr. |
|---|---|---|
| To S. D. LINTON & CO., | | |
| To 100 barrels Sup. flour, at $5.50, - - | | $550.00 |

to be delivered at any time during the winter when wanted. from this date. Augusta, Sept., '53.

S. D. LINTON & CO.,
Per MEAD."

And upon the hearing of which cause in the City Court of Augusta, the presiding Judge ordered a nonsuit, on the ground, that " the promise proved on the part of the plaintiff, was wholly without consideration, inasmuch, as by the plaintiff's own showing, there was no obligation by him to take the flour contracted for, he having the option to call for it or not, as he thought proper, and only agreeing to pay for what he did call for."

The following evidence was introduced on the part of the plaintiff:

*Augustus D. Williams* sworn, testified that he made a contract with Linton & Co., for the purchase of one hundred barrels of flour from them, at five dollars and a half per barrel; that he was acting in that behalf as agent for the plaintiff, and was thereunto lawfully authorized; that he agreed with Linton & Co., in behalf of plaintiff, to pay them for the flour according to the custom of merchants in Augusta, that is, on the first of each month, he (the plaintiff) was to pay them for the flour delivered during the month preceding; that thereupon, said Linton & Co. executed and delivered to him, for the plaintiff, the said written instrument; that a short time after, he called on Linton & Co., tendered to them twenty seven dollars and a half in gold, and in the name of the plaintiff, demanded five barrels of flour, in pursuance of said contract, which were refused; that the grade or class of flour specified in said agreement, advanced steadily, and was worth during the next succeeding winter, from seven and a half to eight dollars per barrel.

*Martin Bridwell* sworn, desposed that superfine flour, in the winter of 1853—54, was worth from seven and a half to eight dollars per barrel.

*Adrian V. Laroch* sworn, desposed, that in company with plaintiff, on the 31st January, 1854 he called on defendant, and saw plaintiff tender to him five hundred and fifty dollars in gold, and heard him demand of the defendant the one hun-

dred barrels of flour, in pursuance of said written contract, which were refused by defendant.

After hearing argument, the Superior Court overruled the decision of the City Court of Augusta, and ordered that the nonsuit should be set aside, and the case be reinstated, and submitted to the jury upon the proofs.

To this decision of the Court, counsel for the said Samuel D. Linton & Co. filed his bill of exceptions, assigning the same as error.

CLAIBORNE SNEAD, for plaintiff in error.

MILLERS & JACKSON, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

The return to the *certiorari* shows, that on the 7th day of September, 1853, a negotiation, for the sale and purchase of flour, was entered into by the parties, through their respective agents, which resulted in the delivery to the plaintiff, by the defendant, of the following note of sale:

C. A. WILLIAMS,
                    To S. D. LINTON & CO.     Dr.
To 100 barrels Sup. Flour, at $5.50,     -     -     $550.00
to be delivered at any time during the winter when wanted, from this date.   Augusta, Sept., '53.
                              S. D. LINTON & CO.,
                              *Per* MEAD.

That on the 31st of January, 1854, plaintiffs called on defendants and tendered in gold, the full amount of $550, and demanded the 100 barrels of flour, which were refused to be delivered.   To recover damages, for a failure or refusal to perform their contract, this action is brought against the defendants; and at the trial, the above facts were presented to the jury, with the additional proof of the value of flour at Augusta, in the winter of 1853—54.   The City Court held,

that the evidence was insufficient to entitle the plaintiff to a verdict, who was, on motion of counsel for defendants, compelled to submit to a nonsuit. Was this a nude pact, and were not the defendants bound by their contract? Judge Holt reversed the decision of the Court below. He delivered the following opinion:

" This Court cannot perceive how a contract, for the sale of one hundred barrels of flour, for five hundred and fifty dollars, can, with much propriety, be called a void agreement. The commodity and the price are both fully stated. It was certainly within the power of the contracting parties to stipulate the time of delivery; and this they have done with sufficient certainty. The plaintiff might, by the terms of the note or memorandum, postpone the delivery to the end of the winter. He must then receive and pay. Neither party had the power to repudiate. If both parties had signed this paper, it might have seemed plainer, that both were bound by it. But the liability of neither would have been thereby increased. One signed, and the other accepted it. And there is in it a perfect mutuality of undertakings."

In confirmation of Judge Holt's opinion, we would add, that it is laid down by Mr. Greenleaf, that it is not necessary that the agreement or memorandum, to be binding, should be signed by both parties, or that both be legally bound to the performance; for the statute only requires that it be signed by the party to be charged therewith; that is, by the defendants, against whom the performance or damages are demanded. *Greenleaf on Ev.* 1 *vol. sec.* 268. And in support of this proposition, he cites the case of *Allen vs. Bennett,* 3 *Taunton,* 169 ; *Shirley vs. Shirley,* 7 *Blackford,* 452 ; *Davis vs. Shields,* 26 *Wendell,* 341 ; which fully sustain the doctrine.

Chancellor Kent maintains the same position. He says, the signing of the agreement by one party only, is sufficient, provided it be the party sought to be charged. For he is estopped by his signature from denying, that the contract was

validly executed, though the paper be not signed by the other party, who sues for a performance. 3 *Kent's Com.* 510, *and cases there cited.*    And Lord Manners, *in* 2 *Ball & Beatty*, 370; Sir William Grant, *in* 3 *Ves. and Beam.* 192; Sir William Plummer *in* 2 *Jac. and Walk.* 426; *Ballard vs. Walker*, 3 *Johns. Cas.* 60; *Selon vs. Slade, ib.* 265; *Clayson vs. Bailey*, 14 *Johns.* 487; *Douglass vs. Stears*, 2 *Nott & McCord*, 207; *Palmer vs. Scott*, 1 *Russ. and Milne*, 391; *Champion vs. Plunar*, 1 *New Rep.* 252; *Egerton vs. Mathews*, 6 *East.* 307; *and Sanderson vs. Jackson*, 2 *Boss. & Pull.* 238; *Ross on Contracts*, 85; 2 *Boss. & Pull.* 447; 1 *East.* 203; 23 *Pickering*, 400; 2 *Hall*, 405; 4 *Iredell*, 257; 3 *Humphrey*, 19; 5 *Ga. Rep.* 171; *and* 1 *Kelly*, 220, are all authorities to the same point.

In this case the contract is full and complete. All the terms of it can be collected from the writing. The name of Williams does appear in it. True, it is put there by the defendants, but Williams, by accepting the contract, as thus written, ratifies the use of his name. Under these circumstances, the signature, in writing, by Linton, thereby binding himself, is a good consideration for the promise on the part of Williams, to pay the price stipulated for the flour. He might call for it at any time during the winter. He was bound to receive the flour, and pay for it, by the end of the winter.

We hold, therefore, that there was not only a sufficient consideration for the promise, but that the contract, as executed, was not within the statute of frauds.

In *Allen vs. Bennett*, it was said by one of the Judges' that the statute was chiefly made for the benefit of buyers.

Judgment affirmed.