HIGHTOWER vs. THE STATE OF GEORGIA.

1. In section 4500 of the Code, which prohibits the employment of a servant of another under written contract, attested by one or more witnesses, the term employment is not synonymous with hiring, but means to use a servant for a special or general purpose, inconsistent with his duty to his employer, with a mutual benefit.

2. In order to protect a party hiring a servant from the interference of others during the term for which the servant is employed, the contract must be in writing and attested by one or more witnesses, but the statute does not require that it be signed by both parties. If it be signed by the servant only, and accepted by the master, it is binding and sufficient, especially if he receives services thereunder.

May 13, 1884,

Criminal Law. Master and Servant. Contracts. Hiring. Before Judge CLARK. City Court of Atlanta. September Term, 1883.

Reported in the decision.

JAS. A. GRAY, for plaintiff in error.

W. D. ELLIS, solicitor city court, for the state.

HALL, Justice.

The indictment contained two counts, one for employing the servant of another, during the term for which he

was employed, and who was under a written contract, attested by one witness, the defendant knowing that the servant was so employed, and that his term of service was not then expired, and the other for enticing, persuading and decoying the said servant, who was under contract as aforesaid, knowing that he was the servant of the prosecutor, and that his term of service had not expired. There was a conviction and a motion for a new trial upon various grounds, which was denied, and hence this writ of error.

It will be necessary to consider only two questions made by this motion :

First. Does the statute under which this indictment is framed (Code, §4500) require that the contract shall be signed both by master and servant, in order to subject to prosecution a party knowingly employing or enticing the servant during the term for which he engaged ?

Second. What is the meaning of " employing," as used in this act ? Does it embrace a case where the servant is specially permitted, during the term for which he was hired to another, to work for the benefit of a defendant, and to serve him in any capacity, either special or general, without any stipulation as to the length of service or compensation therefor ? Is this such an employment as will violate the statute ?

1. We will consider these propositions in their inverse order. It is contended that the term " employment," in its legal sense, means " hiring," and that, as by the Code, §2085, hiring is a contract by which one person grants to another the use of the labor and industry either of himself or his servant, during a certain time, for a stipulated compensation, that the court erred in charging the jury, if they believed from the evidence that the defendant specially permitted the prosecutor's servant to serve him in any capacity which was beneficial to him, during the term that the defendant knew the servant was employed in the manner prescribed by law by another, then they would be authorized to find him guilty; that "to

use a servant for a special or general purpose, inconsistent with his duty to his employer, with a mutual benefit, is a sufficient employment under this statute." This charge, it seems to us, accurately defines the term " employment," as used in the statute. The idea of " hiring " may be involved in " employment," but its application is not restricted to any particular mode of use, as hiring. Use is synonymous with employment, and both include many other things besides hiring. One may use a thing, that is may employ it in his service or business, without any contract for any stipulated time or price whatever. Webster's dictionary, *verbis* " employment " and " use."

We are not aware of any legal sense, distinct from its ordinary signification, in which the word in question is used. If the legislature had intended to attach to it the confined signification contended for, it would have been an easy matter to have expressed that intention, but they have not done so; and there is nothing in the context or purpose of the act which could justify such a conclusion. Indeed, just the opposite of this intention seems to have been in the legislative mind, in order to prevent an evasion of the great object they had in view, viz., to prohibit such interference with this species of contracts as would render the supply of necessary labor irregular and uncertain. Persons are prohibited, under penalties, from employing the servants of others during the terms of their engagement, or from enticing, persuading or decoying them, or attempting to do so, to leave their employers, " either by offering higher wages, or in any other way whatever." This language stands in no need of interpretation; it speaks for itself; its scope and meaning are palpable and unmistakable, and in attempting to confine it, we should run counter to the plainly expressed views of the legislature.

2. To protect a party hiring a servant from the interference of others, during the term for which the servant is employed, the statute requires the contract to be in writ-

ing, and to be attested by one or more witnesses. It does not require, in express terms, the signatures of both parties, nor of either of them, to the contract, nor does it declare that if it is signed by the servant only, that, on that account, it shall be void. The servant is certainly bound by his signature, and the other party, by accepting and holding the paper containing it, is likewise bound; especially is this so where there has been a part performance, as was determined by this court in *Linton and others vs. Williams*, 25 *Ga.*, 391. It is true that was a contract for the future delivery of goods, and the one under consideration was for the future performance of personal services. What there is in the nature of such an undertaking to distinguish it from the principle asserted in that case, we do not perceive, and we are equally at a loss to understand how a mere interloper and wrong-doer can be permitted to avail himself of a power which the parties to a contract do not possess. There was no error in refusing to repel the contract from evidence, nor in the charge based thereon, after it had been admitted. The circumstances attending the alleged employment of the servant were submitted to the jury under proper instructions of the court; from them they seem to have been satisfied of the defendant's guilt, and the judge who tried the case did not abuse his discretion in allowing the verdict to stand.

Judgment affirmed.