ASHCRAFT *v.* STATE.

Opinion delivered November 17, 1919.

1. TICK ERADICATION—FAILURE TO DIP CATTLE.—By proper order appellants were directed to dip their cattle at a certain time. The dipping vats had been blown up, and appellants did not rebuild them on the ground that they might be blown up again. *Held,* under the facts that appellants were liable for their failure to obey the order to dip their cattle.

2. SAME—ARBITRARY OR UNREASONABLE ORDER.—A cattle owner is not required to obey the arbitrary or unreasonable order, or one that is physically impossible to fulfill, made by the Board of Control.

Appeal from Perry Circuit Court; *Guy Fulk,* Judge; affirmed.

*J. H. Bowen* and *Reid, Burrow & McDonnell,* for appellants.

The testimony shows that the vats were blown up and tended to show a physical impossibility to comply with the rules promulgated and the court erred in refusing a jury trial and in excluding all testimony except that which tended to show that appellants failed to dip their cattle. Appellants were certainly entitled to a jury trial, fairly and impartially under proper instructions. The indictment charged a misdemeanor only, and the judgment should be reversed, as appellants were, under the Constitution, entitled to a jury trial.

*G. W. Emerson,* Prosecuting Attorney, and *G. B. Colvin,* Deputy Prosecuting Attorney, for appellee.

This is a misdemeanor and the only defense was that the vats had been blown up. The trial judge therefore was authorized, after hearing the evidence, in directing a verdict of guilty. This is not a violation of a State law but only of the rules promulgated by the State Board of Control. The act vests the board with full power to promulgate the necessary rules and regulations for dipping cattle to enforce the penalty, a mere fine. No legal reasons were shown for failure to dip and there was no question for a jury, and hence no error.

WOOD, J. The appellants were convicted of the crime of failing to dip their cattle under the rules promulgated by the Board of Control of the Agricultural Experiment Station requiring all persons owning or having charge of any cattle to dip the same every fourteen days after having been notified by the duly authorized inspector having supervision thereof, to dip the cattle at a specified time in a vat or disinfecting station provided for that purpose.

The cases were consolidated and tried as one in the court below and there is a stipulation in the record by which it is agreed that the indictment in the case of

Lee Ashcraft is the same as that returned in all the other cases. It is agreed that the records introduced in the various cases should be considered as one cause in this court. By the stipulation, however, the statement made by each defendant might be considered as disclosing the facts of his particular case as the same were offered in proof in the trial court and which that court excluded.

The appellants were tried before the court sitting as a jury. The appellants demanded a jury trial which was refused.

The appellants offered to introduce the testimony which is as set forth in the bill of exceptions in each particular case, and which was to the effect that the appellants had failed to dip their cattle for the reason that the vats had been blown up and they were consequently unable to dip.

One of the appellants testified that before the time came to dip the vat was blown up, then it was put off until the first of August. "The vat was never fixed any more and we never tried to fix it back because we thought it would be blown up again and everybody was busy with his crops when news came we would not dip until after court."

The testimony of all the appellants to this point is substantially the same.

The act vests the Board of Control with power to enforce the law providing for tick eradication and to this end clothes them with authority to promulgate the necessary rules and regulations for that purpose and provides that any person violating the rules and regulations promulgated by the Board of Control shall be deemed guilty of a misdemeanor and fined not less than $1 nor more than $50. Act 39 of the Acts of 1917, amending Act 86 of the Acts of 1915.

The Board of Control promulgated a rule requiring all persons owning or having charge of any cattle to dip all their cattle every fourteen days under the supervision of the duly authorized inspector of the Board of Control, unless they received written notice that they were not required to dip their cattle.

It will be observed that the rule promulgated by the Board of Control did not make any provision whereby the parties required to dip cattle may be excused for a failure to comply with the rule.

However, if the Board of Control should promulgate rules that were so arbitrary and unreasonable that it would be a physical impossibility for any one to comply with same, such rules would be unconstitutional and void, because no man could be judged a criminal and punished by a fine for the violation of a law which it would be physically impossible for him to obey. Such a law would be in plain derogation of article 2, section 9, of our Constitution, which provides that excessive fines shall not be imposed or cruel or unusual punishment be inflicted.

The indictment charges that the appellants "unlawfully and wilfully violated said rule," etc. There could be no wilful or unlawful violation of a rule which requires one to do an act that it would be physically impossible for him to perform. But the record in this case presents no such state of facts. Here the undisputed evidence shows that, after the vats were destroyed, the appellants made no effort to rebuild because "they thought they would be blown up again and everybody was busy with his crops." Such was not an excuse which the law would tolerate.

The offense of which appellants were convicted is only a misdemeanor punishable by fine. If the cause had been tried before a jury and the jury under the evidence had returned a verdict of acquittal, the court could have set aside the verdict and directed a new trial, or the court could have instructed the jury upon the undisputed evidence to return a verdict of guilty. Therefore, it is manifest that there was no prejudicial error to the appellants in the refusal of the court to require a jury trial.

The judgments are correct, and are affirmed.